Donald R. STANGL, et al., Plaintiffs,

v.

OCCIDENTAL LIFE INSURANCE
COMPANY OF NORTH CAR-
OLINA, et al., Defendants.

Case No. CIV–09–1164–R.

United States District Court,
W.D. Oklahoma.

Aug. 16, 2011.

Tony Gould, George H. Brown, Joshua C. Stockton, Brown & Gould PLLC, Oklahoma City, OK, for Plaintiffs.

Amy M. Stipe, Sidney G. Dunagan, Gable & Gotwals, Oklahoma City, OK, Barry S. Richard, Bridget K. Smitha, Glenn T. Burhans, Jr., Greenberg Traurig, Tallahassee, FL, for Defendants.

## ORDER

DAVID L. RUSSELL, District Judge.

Before the Court are cross motions for summary judgment. Defendants Occidental Life Insurance Company of North Carolina ("Occidental") and Philadelphia American Life Insurance Company ("Philadelphia American") have filed a motion for partial summary judgment as to Plain-

tiffs' individual claims[1] related to "actual charges." Doc. No. 40. Plaintiff Donald Stangl individually has filed a cross motion for partial summary judgment on the specific claims related to actual expenses. Doc. No. 43. The motions have been fully briefed, with both Plaintiffs and Defendants being allowed to and filing supplemental briefs. Doc. Nos. 73 & 74.

Defendants Occidental and Philadelphia American assert that they are entitled to summary judgment on Plaintiff's damages claims to the extent they relate to Philadelphia American's interpretation of "actual charges" and "actual expenses" subsequent to the effectiveness of Okla. Stat. tit. 36, § 3651 on November 1, 2006. Additionally, they seek summary judgment on Plaintiffs' claims for declaratory relief to the extent the Court determines that the statutory definition under Section 3651(A) unambiguously "means the amount actually paid by or on behalf of the insured and accepted by a provider for services provided" and that that definition governs Philadelphia American's payment of benefits under the policy at issue. In support of their motion, Defendants argue that Section 3651 mandates denial of Plaintiffs' "actual charges" and "actual expenses" claims as a matter of law because the statutory definition of "actual charges," which the parties have agreed is synonymous with "actual expenses," unambiguously requires Philadelphia American to limit benefits to the amount accepted by a medical provider as full payment. Additionally, Defendants argue that they did not act in bad faith by relying upon Section 3651 to determine what amounts were payable to Plaintiffs under the insurance

policy as "actual charges" or "actual expenses."

In response to Defendants' motion, Plaintiffs argue that Section 3651 does not apply to Plaintiffs' individual claims under the radiation and chemotherapy benefit in the policy because that benefit is based upon "actual expenses," not "actual charges," and Section 3651 does not define "actual expenses." In interpreting Section 3651, Plaintiffs rely on the Latin maxim of *expressio unius est exclusio alterius* and assert that the Court should reject Defendants' attempt to defeat Plaintiffs' claims under the "actual expenses" provision of their Radiation and Chemotherapy Benefit by engrafting non-statutory language in the policy. However, Plaintiffs argue that even if the Court determines that Section 3651 is applicable to Plaintiffs' individual claims for radiation and chemotherapy benefits, that section requires Defendants to pay benefits based on the "billed charges." This is so, Plaintiffs assert, because there is a conflict between the first and second sentences of Section 3651(B) as to what law applies to the cancer policy in this case which predated the statute. Plaintiffs read Section 3651(B) to require the term "actual charges" to be interpreted by using both prior law and the definition in the new law, requiring the Court to resolve the conflict. They assert that "[t]he established rule in Oklahoma is if there is any conflict between two sections of a statute, the last in order of position must prevail." Plaintiffs Response at p. 15 (footnote omitted) (*quoting Arkla Exploration Co. v. Norwest Bank of Minneapolis, National Association,* 948 F.2d 656, 659 (10th Cir.1991)). Accordingly,

---

**1.** Plaintiffs brought this case as a class action but there has been no certification for class action treatment.

Plaintiffs assert that the second sentence of Section 3651(B) must be applied by the Court such that "the law" in effect before enactment of § 3651(A) governs the meaning of "actual charges" and "actual expenses." Moreover, Plaintiffs assert that Defendants' proposed construction of § 3651(B) would render the second sentence of· it superfluous and meaningless. They also assert that giving full effect to the second sentence of § 3651(B) and finding that the definition in § 3651(A) does not apply to pre-statute policies also resolves any question as to whether the statute has retroactive effect or any potential problem created by giving the statute retroactive effect and harmonizes the statute with other Oklahoma insurance statutes, in particular Okla. Stat. tit. 36, § 1204(7)(B)[2]. Plaintiffs argue that applying the second sentence of § 3651(B) avoids retroactive application of the statute to Plaintiffs' policy which would violate the Contract Clause of the United States Constitution. They imply that Defendants' interpretation of Section 3651(B) and urged application of the first sentence of that subsection would violate the Contract Clause because it would impair Plaintiffs' vested right to have their policy interpreted as the parties "agreed" it was to be interpreted at the time of contracting and that Defendants have presented no evidence of a significant and legitimate public purpose behind the passage of § 3651. Finally, with respect to and how § 3651 applies in this case, Plaintiffs argue that Section 3651's placement within and as an addendum to "The Life, Accident and Health Insurance Policy Language Simplification Act" (the "Simplification Act") indicates that the Legislature's purpose was merely to clarify, going forward, the term "actual charges" in post-enactment policies. Because the Legislature did not express that one of the reasons for enactment of § 3651 was to prevent a windfall to insureds in its enumeration of purpose and intent of the Simplification Act, the Court should reject that purpose, urged by Defendants, as the purpose of § 3651, Plaintiffs maintain.

Defendants' motion for summary judgment directed to Plaintiffs' bad faith claim should be rejected, Plaintiffs assert, because a question of fact exists as to whether it was reasonable for Defendants to rely on § 3651 defining "actual charges" in interpreting the term "actual expenses" used in the Radiation and Chemotherapy Rider to Plaintiffs' policy. They further assert that any reasonable reliance by Defendants on § 3651 is belied by the facts that Defendants waited two years after the statute's enactment to change their interpretation of "actual expenses" and by Defendants' conduct in providing Plaintiffs with a "special exception" to Section 3651 by paying Plaintiffs twice the amount of Medicare-approved amounts for expenses claimed.

The following facts are undisputed.

On or about May 1, 1999, Plaintiff Donald Stangl purchased from Defendant Occidental a limited benefit cancer insurance policy. On or about September 19, 2003, Defendant Philadelphia American entered

---

**2.** Subsection 7(b) of Section 1204 of Title 36 of the Oklahoma Statutes provides as follows:

 7. Unfair discrimination.

 . . .

 (b) Making or permitting any unfair discrimination between individuals of the same class and of essentially the same haz-ard in the amount of premium, policy fees, or rates charged for any policy or contract of accident or health insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract, or in any other manner whatever.

 Okla. Stat. tit. 36, § 1204(7)(b).

into an assumption agreement with Occidental whereby Philadelphia American agreed to assume Occidental's contractual liabilities under a block of insurance which included Plaintiff's policy. The assumption became effective on January 31, 2004, but Philadelphia American actually began handling the administration of the assumed block of insurance policies on October 1, 2003. Pursuant to the Assumption Certificate which was issued to Plaintiff Donald R. Stangl as of January 1, 2004, which was to be attached to and made a part of Plaintiff's Occidental policy, which Defendant Philadelphia American renumbered as Policy Number 6355006125, Plaintiff was advised as follows:

> THIS IS TO CERTIFY that PHILADELPHIA AMERICAN LIFE INSURANCE COMPANY, a life insurance company organized and existing under the laws of the State of Texas with offices in Houston, Texas, hereby assumes all contractual obligations and liabilities of OCCIDENTAL LIFE INSURANCE COMPANY OF NORTH CAROLINA, Waco, Texas, under the policy identified above and agrees to carry out the obligations existing under said policy issued by OCCIDENTAL LIFE INSURANCE COMPANY OF NORTH CAROLINA in accordance with the terms and conditions thereof and amendments thereto, if any, the same as if such policy had been originally issued with all its terms, covenants, conditions, stipulations and provisions, by PHILADELPHIA AMERICAN LIFE INSURANCE COMPANY. Please be advised that your payment of premiums to PHILADELPHIA AMERICAN LIFE INSURANCE COMPANY as described below shall be considered proof of your consent to the transfer of your policy to PHILADELPHIA AMERICAN LIFE INSURANCE COMPANY and your agreement to release OCCIDENTAL LIFE INSURANCE COMPANY OF NORTH CAROLINA from any further liability under the policy. Please also note that you have the option of canceling your policy in accordance with the terms of the policy.

> Exhibit "10" to First Amended Complaint.[3]

*See* First Amended Complaint at ¶ 58; Answers to First Amended Complaint at ¶ ¶ 58.

Relevant provisions of Plaintiff's policy as originally issued and which remained in effect after Defendant Philadelphia American's assumption of the policy include that the policy term length was one year, from May 1, 1999, to the first renewal date, May 1, 2000,[4] Exhibit "1" to First Amended Complaint at p. 3, and the following:

> We guarantee your right to renew. This policy is guaranteed renewable at

---

**3.** Plaintiff alleges that the transfer of his policy from Defendant Occidental to Defendant Philadelphia American was without his consent and that Defendant Occidental was not relieved of its contractual obligations to Plaintiff under the policy by the transfer. However, clearly Plaintiff has continued to pay premiums on the policy inasmuch as it has remained and remains in effect post-transfer. Pursuant to the Assumption Certificate, Plaintiff's payment of premiums post-transfer of his policy to Defendant Philadelphia American constituted proof of his consent to Defendant Philadelphia American's assumption of the contractual obligations and liabilities under Plaintiff's policy and of his agreement to the release of Defendant Occidental from any further liability on his policy.

**4.** Plaintiffs have denied that their policy is renewed or renewable annually, stating that they pay a monthly premium of $204.20, amounting to an annual premium of $2,462.40, and citing the Premium Increase

renewable at your option for 20 years. After 20 full policy years the policy will be paid up and no additional premiums will be due. As long as you continue to pay your premiums as due, you have the right to renew this policy for terms of the same length as the original one.

Exhibit "1" to First Amended Complaint

Cover Page & p. 13.

Conformity with state statutes: If any part of this policy conflicts with the law of the state where you live, the policy is automatically amended to comply with the law.

*Id.* at p. 11.

The Radiation and Chemotherapy Rider, which was made a part of Plaintiff's policy, and which provides for the benefits on which Plaintiffs' claims which are the subject of these motions are based, states in pertinent part as follows:

RADIATION AND CHEMOTHERAPY BENEFIT: We will pay the actual expenses when a Covered Family Member receives the following therapy treatments for the purpose of modification or destruction of cancerous tissue. This benefit includes drugs and medicines administered to provide such therapy treatments and does not include laboratory tests, diagnostic x-ray or pre-planning related to these therapy treatments.

1. Teleradiotherapy using either natural or artificially propagated radiation.

2. Interstitial or intercavitary application of radium or radioisotopes in sealed or non-sealed sources.

3. Cancerocidal chemical substances and their application.

This benefit is payable for therapy treatment administered by medical personnel in a physician's office, clinic, or hospital. NO LIFETIME MAXIMUM.

Exhibit "1" to First Amended Complaint at p. 21.

Throughout Plaintiff's supplemental cancer policy, the terms "actual charges" and "loss resulting from cancer treatment" are used, as well as the term "actual expenses" in the Rider quoted above. *See* Exhibit "1" to First Amended Complaint. *See also* First Amended Complaint at ¶ 22. The policy does not define the terms "actual charges" and "actual expenses." Plaintiffs admit that the policy terms "actual charges" and "actual expenses" are synonymous. First Amended Complaint at ¶¶ 122 & 124 & p. 38; *see also* Plaintiffs' Response, Response to Undisputed Fact No. 5. It is undisputed that prior to Defendant Philadelphia American's acquisition of Plaintiff's policy, Defendant Occidental interpreted the terms "actual charges" and "actual expenses" and the

Notice from Philadelphia American dated February 17, 2010. Plaintiffs' Response, Response to Undisputed Material Fact No. 9, citing Exhibit "5" to Plaintiffs' Response. However, the policy clearly provides that it remains in effect for a term of one year, beginning at 12:00 a.m. on May 1, 1999 until 12.01 on May 1, 2000, the first renewal date, and that the policy is guaranteed renewable at the insured's option for 20 years. *See* Policy (Exhibit "1" to First Amended Complaint) at

Cover Page and p. 3. The Premium Increase Notice to which Plaintiffs refer specifically makes reference to the fact that the new monthly premium rate will be "[e]ffective for premiums due on or after 4/01/10," the renewal date on the policy when, if renewed, the policy will again be in effect until the following May 1. The fact that an insured has at least the option of paying the premiums on a monthly basis does not alter the terms of the policy.

like as the amount reflected on the service provider's invoice (the billed amount), without regard to any discounted or negotiated lower amounts service providers had agreed to accept as full payment from a claimant's major medical insurer in exchange by contract or otherwise, and that Defendant Occidental made payments according to that interpretation. First Amended Complaint at ¶ 29 & 30. Plaintiffs, however, assert that at the time of contracting both Defendant Occidental and Plaintiffs intended, understood and agreed that the terms "actual charges" and "actual expenses" meant the billed amount, irrespective of the fact that the healthcare provider had agreed to accept a lesser, discounted amount as full payment. *See* Plaintiffs' Response, Response to Defendants' Undisputed Material Facts at ¶ ¶ 5 & 6; Plaintiff's Response at p. 2 ("there is simply no dispute that at the time Plaintiffs entered into their contract with Defendants, the parties knew, understood, agreed, and intended that the phrases 'actual charges' and 'actual expenses' meant the 'Billed' Charge rather than the 'Discounted' Charge."). However, Plaintiffs have submitted no evidence as to their intent or understanding at the time of contracting nor have they submitted any evidence of any agreement between Plaintiff Donald R. Stangl, the insured under the policy, and either Defendant as to what those terms meant.[5] The evidence merely establishes how Defendant Occi-

dental interpreted those terms and paid benefits pursuant to them, from which Defendant Occidental's intent as to what the meaning of those terms was can be inferred.

It is also undisputed that in 2006, the Oklahoma Legislature enacted Section 3651 of Title 36 of the Oklahoma Statutes, effective November 1, 2006, which in its entirety provides as follows:

### § 3651. "Actual charge" and "actual fee" defined—Application

A. As used in an individual or group specified disease insurance policy, "actual charge" or "actual fee" means the amount actually paid by or on behalf of the insured and accepted by a provider for services provided. Insurance policies that use these terms must use them as defined in this section.

B. Except as provided by subsection C of this section, the change in law made by this section applies only to insurance policies delivered, issued for delivery, or renewed on or after the effective date of this act. [FN1] An insurance policy delivered, issued for delivery, or renewed before the effective date of this act is governed by the law in effect immediately before that date, and that law is continued in effect for that purpose.

C. This section applies to an insurance policy in effect on the effective date of this act only if the policy does not define "actual charge" or "actual fee".

---

**5.** After Defendant Occidental paid Plaintiff Stangl amounts actually billed by the service provider as benefits under policy provisions referring to "actual charges" or "actual expenses," Plaintiffs may have had an expectation that "actual charges" or "actual expenses," were the amounts billed by the service provider, and the expectation may have even been a reasonable one, but it was no more than a unilateral expectation.

There is no evidence that Plaintiffs discussed the meaning of those terms with Defendant Occidental or came to any agreement with it as to how those terms would be defined or interpreted before they purchased the policy and there is no provision in the policy which prohibited the insurer from altering its interpretation of those undefined terms.

Okla. Stat. tit. 36, § 3651 (footnote omitted)

In or about September of 2008, Defendant Philadelphia American changed its interpretation of the policy terms "actual charges," "actual expenses" and the like to the statutory definition of "actual charges" to mean the amount accepted by the medical provider as payment in full. It began applying the Section 3651 definition to all policies delivered, issued for delivery or renewed in the State of Oklahoma on or after the effective date of Section 3651. By letter dated September 4, 2008, Defendant Philadelphia American notified Plaintiff Donald R. Stangl of the Oklahoma Statute which became effective November 1, 2006, Section 3651, its definition of "actual charge" or "actual fee" and its application to any specified disease policies delivered, issued for delivery or renewed on or after November 1, 2006 that does not contain a definition of the terms "actual charge" or "actual fee." First Amended Complaint at ¶ 76 & Exhibit "16" to First Amended Complaint; Declaration of Susen Bookwalter (Exhibit "3" to Defendants' Motion) at ¶ 17. In the letter, Defendant Philadelphia American also notified Plaintiff as follows:

> Going forward, any claims submitted for expenses incurred on or after your policy anniversary following November 1, 2006 will be paid in accordance with Oklahoma law. This means that in addition to itemized bills, we will need copies of your Explanation of Benefits statement from your primary insurance carrier for the charges you send us. We are not requiring this information for claims you have already sent us.
>
> First Amended Complaint at ¶ 76 & Exhibit "16" to First Amended Complaint.

Subsequent to this notice, Defendant Philadelphia American began paying benefits based upon the amounts accepted by Mr. Stangl's medical provider as payment in full on December 17, 2008. First Amended Complaint at ¶ 79; Booker Declaration at ¶ 18.

However, after Plaintiff complained to his independent insurance agent and the Oklahoma Insurance Department about Defendant Philadelphia American's change of interpretation of the terms "actual charges" and "actual expenses" in Plaintiff's policy and the consequent reduction in cash benefits, see First Amended Complaint at ¶¶ 84 & 85, Defendant Philadelphia American, by letter dated April 24, 2009, granted Plaintiff a "special exception" from its interpretation of "actual charges" and "actual expenses" and the amounts it would pay on Plaintiff's claims therefor, as follows:

> Your claim has been reviewed again in response to a call from your agent and we are pleased to advise you that we will make a special exception with regard to your claims.
>
> Under separate cover you will receive an additional check for $1,894.10 for expenses incurred at Oklahoma Oncology from November 17, 2008 to November 21, 2008. As a special exception on this claim and future claims that are received from you, we will provide benefits equal to two times the Medicare approved amounts for those expenses that are eligible under your policy. Please continue to submit the Medicare Explanation of Benefits statements along with the itemized bills for each claim.
>
> First Amended Complaint at ¶ 86 & Exhibit "17" to First Amended Complaint; Exhibit "4" to Plaintiff's Response

to Defendant's Motion for Summary Judgment; Defendant Philadelphia American's Answer at ¶ 87.

Plaintiff Donald Stangl has never communicated to Defendant Philadelphia American, orally or in writing, his willingness to release Defendant from what he considers Defendants' contractual obligation for amounts of benefits to be paid by Defendant in exchange for the "special exception" payments but Plaintiff has accepted the "special exception" payments. First Amended Complaint at ¶¶ 88–90; Philadelphia American's Answer to First Amended Complaint at ¶¶ 88–90. Plaintiff Donald Stangl is receiving continuing cancer treatment and continues to submit claims for benefits to Defendant Philadelphia American under the supplemental cancer policy. First Amended Complaint at ¶ 91. According to Plaintiff's motion for partial summary judgment, for the period from November 19, 2008 through April 5, 2010, Defendant Philadelphia American has underpaid Plaintiff for "actual expenses" covered by the Radiation and Chemotherapy Benefit by $12,905.68. *See* Plaintiff's Motion [Doc. No. 43], Material Facts Not in Dispute at ¶¶ 27–31.

■ Plaintiffs argue that Defendant Philadelphia American could not change the interpretation of the terms "actual charges" and "actual expenses" because the policy was guaranteed renewable on the same terms and conditions and Defendant Philadelphia American in its assumption agreement agreed to carry out the obligations in the policy issued by Occidental "in accordance with the terms and conditions thereof and amendments thereto, if any, the same as if the policy had been originally issued with all of its terms...."

Plaintiffs Response, Response to Undisputed Material Fact No. 2, *quoting* Assumption Certificate (Exhibit "2" to Plaintiffs' Response at p. 12); *see* Plaintiff's Donald Stangl's Cross Motion for Partial Summary Judgment at pp. 3 & 18, Material Fact No. 6. However, Defendant Philadelphia American did not make any change in the *terms* of the policy; rather, it only altered its interpretation of terms which were undefined in the policy. Moreover, and more importantly, Defendant Philadelphia American did not simply on a whim decide to alter its interpretation of the policy terms "actual charges" and "actual expenses," and to make payments according to its new interpretation of those terms. Rather, the record amply demonstrates that Defendant did so to comply with Oklahoma law, specifically Section 3651, as it was required to do, as it explained to its insured, Plaintiff Donald Stangl. And Plaintiffs were at all relevant times on notice that their policy could and would be automatically amended to comply with the law of the state in which the Plaintiffs lived, which is Oklahoma, in the event any part of the policy conflicted with that law. Policy (Exhibit "1" to First Amended Complaint) at p. 11 ("Conformity with State Statutes").

Because the policy at issue does not define the term "actual charges", which the parties agree is synonymous with or means the same thing as "actual expenses," there is no question but that Section 3651 applied to Plaintiff's policy after the statute's effective date of November 1, 2006. *See* Okla. Stat. tit. 36, § 3651(C). Contrary to Plaintiffs' arguments, Subsection B of Section 3651 is facially unambiguous, the two sentences thereof do not conflict with one another and the statute has no retroactive effect but applies prospectively only upon the delivery, issuance for

delivery or the renewal of any existing policy *after* November 1, 2006. And by virtue of the first sentence of Subsection B of Section 3651, Section 3651 unambiguously applies to and amends Plaintiffs' policy.

Pursuant to Section 3651, which applies only to certain insurance policies which do not define "actual charge" or "actual fee," Okla. Stat. tit. 36, § 3651(C), "actual charge" or "actual fee" in a specified disease insurance policy "means the amount actually paid by or on behalf of the insured and accepted by a provider for services provided," Okla. Stat. tit. 36, § 3651(A), and "[i]nsurance policies that use these terms *must* use them as defined in this section." *Id.* (emphasis added). Subsection B delineates which of the policies not defining those terms to which the new statutory definition applies. The plain and ordinary meaning of the language in the first sentence of Subsection B is that if any policy is either delivered, issued for delivery or renewed after the effective date of Section 3651, the new, statutory definition of "actual charge" and "actual fee" applies to that policy. Thus, if a policy which was in effect prior to November 1, 2006 is renewed after November 1, 2006, like the Plaintiffs' policy which was renewed on May 1, 2007 and May 1 of every subsequent year, the new statutory definition of "actual charge" and "actual fee" applies. The first sentence of Subsection B gives Section 3651 prospective application only, with the renewal of an existing policy treated as reissuance of the policy. The plain and ordinary meaning of the second sentence of Subsection B, on the other hand, is that a specified disease insurance policy that is delivered, issued for delivery or renewed before November 1, 2006, is governed by law in effect before November 1, 2006 and not by Section 3651 provid-

ing a new definition of "actual charge" or "actual fee." Reading both sentences of Subsection (B) in *pari materia,* as the Court must, the statutory definition of "actual charge" or "actual fee" in § 3651(A) does not apply to a specified disease policy delivered or issued for delivery in, for example, 2002, nor does it apply to renewals of that policy in 2003, 2004, 2005 or 2006, if the 2006 renewal occurs *before* November 1, 2006, but the § 3651(A) definition does apply to that same policy (provided, of course, it does not contain a definition for "actual charge" or "actual fee") when that policy is renewed again at any time after November 1, 2006. Again, Subsection B operates prospectively only from the date of its enactment on any delivery, issuance of delivery or renewal of any policy after November 1, 2006.

■ It is true that Section 3651 does not expressly mention or define the term "actual expenses." Rather, it only defines "actual charge" and "actual fee." But it is undisputed that the parties have at all times treated the terms "actual charges" and "actual expenses" as synonymous. Moreover, "[t]he fundamental rule of statutory construction is to ascertain and give effect to legislative intent and that intent is first sought in the language of the statute." *YDF, Inc. v. Schlumar,* 136 P.3d 656, 657 (Okla.2006), *citing World Publishing Co. v. Miller,* 32 P.3d 829, 832 (Okla. 2001). "The words of a statute will be given their plain and ordinary meaning unless it is contrary to the purpose and intent of the statute when considered as a whole." *Welch v. Crow,* 206 P.3d 599, 603 (Okla.2009) (footnote omitted). *See* Okla. Stat. tit. 25, § 1; *Medina v. State,* 871 P.2d 1379, 1382 & n. 5 (Okla.1993). The ordinary, dictionary definition of the term "charge" is "expense." *The American*

*Heritage Dictionary* (Second College Ed. 1982) at p. 260; *Webster's Third New International Dictionary* (1967) at p. 377. "Charge" is a synonym for "expense" in *Webster's New World Thesaurus* (1971) at p. 210. "Charge," "expense" and "fee" are all words which refer to the cost or price of a good or service. From the language of Section 3651(A) as a whole, it is clear that the purpose and intent of the Oklahoma Legislature was to limit the price or cost of the service provided by a medical provider to "the amount actually paid by or on behalf of the insured and accepted by the provider" for those services (even though that amount may be considerably less than the service provider's billed amount) for purposes of specified disease insurance policies that don't define those terms. As the court in *Lindley v. Life Investors Insurance Company of America*, 2010 WL 723670 (N.D.Okla. Feb. 22, 2010) explained, "the statute shows a clear legislative intent to prevent a patient with primary health insurance from receiving a windfall by recovering the difference between the higher billed amount and the actual amount accepted by the provider as full payment," in addition to the amount accepted by the provider as full payment. *Id.* at *5.

Plaintiff's policy does not define the term "actual expenses." But employing the plain meaning of the word "charge" used in Section 3651(A) consistent with the legislative intent and purpose, the term "actual charge[s]" used in Section 3651(A) is synonymous with "actual expenses" so the statutory definition—"the amount actually paid by or on behalf of the insured and accepted by the provider for services provided"—applies to the term "actual expenses" as used in Plaintiff's supplemental cancer policy.

 Alternatively, even if Section 3651 did not apply to Plaintiff's policy's Radia-

tion and Chemotherapy Benefit to the extent it provides for payment of "actual expenses," Defendant Philadelphia American is not bound by its or Occidental's prior interpretation of that term. This is so because the policy contains no definition of the term "actual expenses" as used therein and there is no evidence that Plaintiff and Defendant Occidental and/or Defendant Philadelphia American came to an agreement as to what that term meant. While Section 4405(C)(1) of Title 36 precludes an insured from unilaterally making any change "in any provision" of a "guaranteed renewable" policy while it is in force, in this case Defendant Philadelphia America did not change any provision of its policy; it merely reinterpreted the undefined policy term "actual expenses" in a reasonable manner which comported with contemporary practices of health care providers and primary insurers whereby health care providers *may*, by virtue of contracts with primary insurers or otherwise, accept as full payment for their services an amount actually paid by the primary insurer as payment in full, even though that amount may be less than the health care provider's customary and usual charge or his/her/its billed amount. In such circumstances, the insured does not owe the health care provider the difference between the amount paid by the primary insurer and the amount billed so the insured's "actual expenses" are only what the health care provider agrees to accept from the primary insurer as payment in full.

Plaintiffs, however, argue that retroactive modification of the term "actual expenses" by operation of the Oklahoma statute substantially impairs Plaintiffs' contract rights, in violation of the Contracts Clause. In this regard Plaintiffs argue, in part, as follows:

Plaintiffs have a contract right to have their Policy interpreted according to the terms the parties agree it contained at the time of contracting.

Plaintiffs' Response at p. 21.

It is without reasonable dispute that Defendants' proposed interpretation of § 3651 would impair the contract rights to Plaintiffs because it would fundamentally alter and substantially reduce the benefits they are otherwise, contractually entitled to receive under their Policy. Plaintiffs have a contractual right, which became "vested" at the time Defendants issued their policies, to demand that Defendants continue paying benefits pursuant to their bargained-for agreement. It is further without reasonable dispute that should § 3651 be interpreted to redefine the term "actual expenses" in Plaintiffs' Policy as the "Discounted" Charge, then this interpretation would substantially impair Plaintiffs' guaranteed renewable contract rights. Plaintiff reached an enforceable contractual agreement with Defendants whereupon they agreed to pay premiums in exchange for Defendants agreeing to pay actual expense benefits in the amount of their providers' "Billed" Charges. Now, after they have paid years worth of premiums and have unfortunately been diagnosed with cancer, § 3651 cannot be construed to severely reduce the benefits payable to them without concluding that such a severe reduction constitutes a substantial impairment of their fixed contract rights.

Plaintiffs' Response at pp. 22–23.

First, however, there is no evidence that Plaintiff and either or both of the Defendants ever agreed to what the term "actual expenses" meant. There was no bargained-for agreement as to the meaning of "actual expenses." The policy does not contain a definition of "actual expenses." The only vested contractual right Plaintiffs had relative to the issue herein was to receive payment for their "actual expenses of therapy treatments for the purpose of modifying or destroying cancerous tissue." They did not have any vested contractual right to receive the amount the health care provider charged for such treatments or the billed amount. "Actual expenses" might accurately have represented and may still accurately represent the amount billed by a health care provider for cancer treatments when the recipient/patient remained obligated to pay the difference between what the primary insurer pays and the billed amount. However, where a health care provider of cancer treatments accepts as full payment the amount the primary insurer pays and the recipient/patient does not owe the provider the difference between what the primary insurer paid and the billed amount, the insured's patient's "actual expenses" for the treatments are only the amount for which he/she is financially liable, i.e., the amount paid by his primary insurer. An amount billed by a health care provider that no one is obligated to pay cannot be anyone's "actual expense." An expense, according to Webster's Third New International Dictionary (1967) at p. 800, is "something that is expended in order to secure a benefit . . . ." or the "loss, injury or detriment as the necessary price of something gained." Plaintiffs expend no money and sustain no loss for the billed price of a cancer treatment which is in excess of what the health care provider accepts as full payment for the treatment. Defendant Philadelphia American's reinterpretation of the term "actual expenses" may have been inconsistent with Plaintiffs'

expectation but it did not substantially impair any vested contractual rights. Moreover, Philadelphia American's reinterpretation of the term "actual expenses" and/or application of Section 3651 was not retroactive; it was prospective only beginning with Plaintiff Stangl's first renewal of his policy effective May 1, 2007 and, as a practical matter, Defendant Philadelphia American did not begin paying claims based on the amount accepted by Mr. Stangl's medical provider as full payment until December 17, 2008.

With respect to whether application of Section 3651 to Plaintiff's policy violates the Contracts Clause,[6] the Court first notes that the Tenth Circuit has held that Oklahoma follows the general rule that "[a]ll statutes in force at the time the contract or insurance is made (or renewed) will be considered to be part of the contract provided that such statutes bear on the subject matter of the contract and define the rights and liabilities of the parties to the agreement." *MGA Insurance Co. v. Fisher–Roundtree*, 159 F.3d 1293, 1296 (10th Cir.1998). In *Lindley v. Life Investors Insurance Company*, 2010 WL 723670, Chief Judge Claire V. Eagan of the Northern District of Oklahoma considered whether Section 3651 violates the Contracts Clause of the United States Constitution if the statute operated retroactively to the Plaintiff's guaranteed renewable policy and in pertinent part said as follows:

Plaintiff cites Okla. Stat. tit. § 4405(C), but this statute simply permits an insur-er to issue a "guaranteed renewable" policy under some circumstances and does not provide any assistance in determining if a subsequent legislative enactment may modify the terms of a guaranteed renewable policy. The Court finds it is unnecessary to resolve this issue because § 3651 expressly applies to "renewals" of insurance policies after the effective date of the statute, and the Oklahoma legislature addressed this issue when it enacted § 3651. The authority cited by plaintiff does not show that the Oklahoma Legislature lacked the authority to pass a statute that prospectively applied to a renewal of his policy and, given the clear legislative intent to apply the statute to renewals of insurance policies, the Court finds that § 3651 applies to renewals of the Policy after November 1, 2006.

*Lindley*, 2010 WL 723670 at \*7

The Contracts Clause of the United States Constitution is not construed literally to mean that a state by statute can never impair a party's contractual rights; rather, it is considered within its historical context to create a limitation on a state's power to extinguish pre-existing contractual relationships. *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398, 432–33, 54 S.Ct. 231, 78 L.Ed. 413, 435 (1934). When considering a Contracts Clause challenge to a state statute, the Court "ask[s] whether the change in state law has operated as a substantial

---

6. In his supplement to his cross motion for partial summary judgment [Doc. No. 73], Plaintiff Stangl relies heavily on the recent decision by the United States District Court for the District of South Carolina in *Montague v. Dixie National Life Insurance Co.*, 2011 WL 2294146 (D.S.C. June 8, 2011) (No. 3:09–687–JFA) to argue that Section 3651 violates the Contracts Clause. The Court has carefully considered that decision. However, the South Carolina statute at issue in that case differs substantially from the Oklahoma statute because the South Carolina statute applied to all *claims* presented after the effective date of the statute, regardless of when the policy was delivered, issued for delivery or renewed, and thus substantially impaired preexisting contracts or contractual rights.

impairment of a contractual relationship." *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). *See Stillman v. Teachers Insurance & Annuity Association College Retirement Equities Fund*, 343 F.3d 1311, 1321 (10th Cir.2003). If a state statute does substantially impair an existing contractual relationship, "the State, in justification, must have a significant and legitimate public purpose behind the [law], such as the remedying of a broad and general social or economic problem." *Energy Reserves Group v. Kansas Power & Light Co.*, 459 U.S. 400, 412, 103 S.Ct. 697, 704, 74 L.Ed.2d 569, 581 (1983). If the state had a significant and legitimate purpose for enacting the statute, a court must determine whether the change in law "[is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption." *Id.* As long as the state is not itself a party to the contract, a reviewing court must "properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Keystone Bituminous Coal Association v. DeBenedictis*, 480 U.S. 470, 505, 107 S.Ct. 1232, 1252, 94 L.Ed.2d 472, 501 (1987).

■ As should be apparent from the foregoing discussion, Plaintiff had a contractual right to payment of benefits under his policy, but the contractual right was to receive payment for his "actual expenses" of cancer treatments, which term was undefined under the policy. The fact that Plaintiff may have expected or even reasonably expected that "actual expenses" equated to the billed amount based upon the manner in which Defendant Occidental and then Defendant Philadelphia American had been paying him does not mean that he had a contractual right to payments

equaling billed amounts he had no obligation for nor does it mean that application of Section 3651, because "actual expenses" are synonymous with "actual charges," constituted a substantial impairment. *See Energy Reserves Group, Inc. v. Kansas Power and Light Company*, 459 U.S. at 411, 103 S.Ct. at 704, 74 L.Ed.2d at 580 ("state regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment.") (citations omitted). Even if Plaintiff had had a right under his policy to payment of cancer treatment benefits in the amounts billed by his medical providers, regardless of whether he owed the providers for the billed amounts, which he did not, the Court agrees with other courts which have considered this issue that Section 3651, by clarifying the meaning of the term "actual charge" and, by logical extension, "actual expense" in a policy in which such terms are undefined, did not constitute a substantial impairment of any right Plaintiff might have had. *See Lindley v. Life Investors Insurance Company of America*, 2010 WL 723670 at *8; Order, *McLaughlin v. American Fidelity Assurance Co.*, Case No. CIV–09–1163–M, 2010 WL 2507523 (W.D. Okla. June 16, 2010) at p. 10. The courts in both of those cases found that Section 3651 merely removed the ambiguity as to the meaning of "actual charges" in the cancer policies under consideration, just as it removes the ambiguity in the undefined term "actual expenses" in the policy herein, inasmuch as "actual charges" and "actual expenses" are synonymous. As the Court in *Lindley* said:

> Plaintiff has a right under the Policy to receive the "actual charges" for his cancer treatment and he is entitled to receive the full amount he is actually obligated to pay his medical providers, but

it is difficult to see how denying him additional funds that he does not owe to his medical providers deprives him of a substantial right under the Policy.

> *Lindley v. Life Investors Insurance Company of America,* 2010 WL 723670 at *8

Finally, considering that the parties explicitly agreed in the policy that the policy would be "automatically amended to comply with state law," the Court finds it difficult to conclude that a state law defining terms undefined in the policy could amount to substantial impairment of Plaintiffs' contractual rights.

Because the Court finds that neither Defendant Philadelphia American's reinterpretation of "actual expenses" in Plaintiffs' policy or its application of Section 3651 defining the synonymous term of "actual charge" to Plaintiffs' policy substantially impaired any contractual right of the Plaintiffs or the Plaintiffs' contractual relationship with Defendant Philadelphia American, the Court finds it unnecessary to address whether the State of Oklahoma had a significant and legitimate public purpose behind Section 3651.

Defendant Philadelphia American has submitted evidence that it "began paying claims to Plaintiffs based on the amount accepted by Mr. Stangl's medical provider as full payment on December 17, 2008," and that it "declined to pay the billed amount sought by Plaintiffs after this date based upon its best understanding of the requirements of Section 3651." Declaration of Susen Bookwalter (Exhibits "3" to Defendants' Motion) at ¶ 18. Section 3651 became effective November 1, 2006, so in Defendant Philadelphia American's understanding and belief, "[a]s of May 1, 2007 [Plaintiff's first policy renewal date after the effective date of § 3651], pursuant to Section 3651, Philadelphia American was no longer required to pay the higher billed amount to Plaintiffs." *Id.* Indeed, Defendant had notified Plaintiffs of these facts by letter dated September 4, 2008. *See id.* at ¶ 17; Exhibit "16" to First Amended Complaint.

■ "Actions taken in reasonable reliance on existing law cannot constitute bad faith because such conduct is not unreasonable." *Anderson v. State Farm Mutual Automobile Insurance Co.,* 416 F.3d 1143, 1148 (10th Cir.2005). Section 3651(B) expressly applies the definition of "actual charge" and "actual fee" to existing cancer policies, like Plaintiffs, that do not contain definitions of those terms and which are renewed after the effective date of Section 3651. And although Section 3651 does not expressly define "actual expenses," the parties had always treated the terms "actual charges" and "actual expenses" as synonymous and, since the statutory term "charge" means "expense," Defendant Philadelphia American's reliance on Section 3651 to alter or clarify its interpretation of the undefined term "actual expenses" and begin paying only the amount that the medical providers of cancer treatments accepted rather than the billed amount, was reasonable as a matter of law. The Court finds that no genuine issue of material fact exists but that Defendant Philadelphia American had a "good faith belief, at the time its performance was required, that it had a justifiable reason for withholding payment [of the billed amount when it was more than the medical provider accepted as full payment] under the policy." *Buzzard v. Farmers Insurance Co.,* 824 P.2d 1105, 1109 (Okla. 1991) (*quoting Buzzard v. McDanel,* 736 P.2d 157, 159 (Okla.1987)).

■ The fact that Defendant Philadelphia American did not begin applying Section 3651 to Plaintiffs' policy until nearly two years after the effective date of that statute does not undermine Defendant's reliance on the statute or the reasonableness of its reliance. It could not have begun to apply the statute until at least six months after the effective date of the statute, or until May 1, 2007, upon Plaintiffs' renewal of their policy. And there is no evidence before the Court that Defendant had actual knowledge of the statute until on or about September 4, 2008, when it notified Plaintiff Donald Stangl of the statute.

Plaintiffs argue that the fact that Defendant Philadelphia American, on or about April 24, 2009, agreed to make a "special exception" with respect to Mr. Stangl's claims, agreeing to pay him an amount for cancer treatment benefits equal to twice the Medicare-approved amounts for those expenses, *see* Exhibit "4" to Plaintiffs' Response; Exhibit "17" to First Amended Complaint, shows that Defendant did not reasonably rely on Section 3651, because Defendant is not currently relying on it. *See* Plaintiffs' Response at pp. 29–30. Indeed, Plaintiffs assert that the "special exception" Defendant created for Plaintiff Donald Stangl reveals "that Defendants' supposed 'reliance' on Section 3651 in paying out benefits on Plaintiffs' claims is pure fiction." *Id.* at p. 30.

Plaintiffs' argument is not persuasive. First, Defendant Philadelphia American itself expressly referred to the amount it agreed to pay Plaintiff Donald Stangl as "a special exception with regard to your claims," Exhibit "4" to Plaintiffs' Response, and stated that it was being made after a call from Plaintiff's agent. *Id.* There is no evidence that Defendant Phila-

delphia American is applying this "special exception" to how it pays claims for cancer treatments across the board, to all policies delivered, issued for delivery or renewed after the effective date of Section 3651. Indeed, the nomenclature "special exception" suggests that it is paying only Plaintiff Donald Stangl's claims in the manner set out in the letter of April 24, 2009. Moreover, the letter to Stangl advising him of the "special exception" with regard to his claims makes no admission, tacit or otherwise, that Section 3651 does not apply to his policy and claims nor suggest that Defendant had erred or reconsidered its position that Section 3651 applied to his policy and claims. Indeed, it may reasonably be inferred that Defendant Philadelphia American made the "special exception" for Plaintiff Stangl as a compromise, in an effort (albeit unsuccessful) to avoid litigation. Accordingly, the fact that Defendant Philadelphia American ultimately created a "special exception" for Plaintiff Donald Stangl as to the manner or amount by which it would pay his cancer treatment expenses does not create a genuine issue of material fact as to whether Defendant reasonably relied on Section 3651 in interpreting "actual expenses" and in paying claims therefor.

Moreover, in the alternative and apart from reasonable reliance on Section 3651, inasmuch as "actual expenses" is not defined in Plaintiffs' policy and Plaintiffs had no *agreement* with either Defendant Occidental or with Defendant Philadelphia American as to the meaning of "actual expenses" or how payments therefor would be determined, Defendant Philadelphia American could alter its interpretation of "actual expenses" to represent the amount the insured was actually obligated to pay his or her medical provider for a cancer treatment (through primary insurance or

otherwise) when that amount was less than the billed amount without incurring bad faith liability. This is so because the Plaintiffs had no contractual right to a definition or interpretation of "actual expenses" as "billed amounts" or to payment on that basis.

As indicated above, Plaintiff Donald Stangl has filed a cross motion for partial summary judgment on his specific claims related to "actual expenses." Doc. No. 43. The foregoing discussion addresses all of the arguments Plaintiff makes in support of his motion and shows that Plaintiff is not entitled to partial summary judgment on his claims for "actual expenses" for cancer treatments under his policy's Radiation and Chemotherapy Benefits.

In accordance with the foregoing, Defendants' motion for partial summary judgment on the individual Plaintiff's claims under their supplemental cancer policy relating to "actual charges" and/or "actual expenses" [Doc. No. 40] is GRANTED and Plaintiff Donald Stangl's cross motion for partial summary judgment on the specific claims related to "actual expenses" [Doc. No. 43] is DENIED.